Good morning, your honors, and may it please the court, Joe Sippert on behalf of the appellants, that's the plaintiffs and the class below. I would like to reiterate at the outset that we are not, in this case and on this appeal, challenging or taking issue with United's ability to make changes to its program. It has, like every airline in the world, I suppose, a frequent flyer program that changes, evolves through time. Some customers probably have strong opinions about whether some of those changes are for better or for worse, but that's irrelevant. We have no problem with their ability to make those changes. What makes this different is that what we're talking about here is a particular group of people that flew X number of miles in a calendar year when United said to those people, if you fly X miles during this calendar year, you will get X, Y, Z benefits in the following year, period. That was the deal. But how is this different from the Lagan case? Well, ultimately, what this case turns on, our case here, and what makes it distinct from Lagan is that there is a carve-out in the terms and conditions. This would be a slam-dunk case for us if it were a situation in which there were no terms and conditions, the ones that led to problems for Lagan. If it was just about whether you were allowed to offer people the chance to earn X, Y, Z benefits for doing something you tell them to do and then stripping it away, no question, we win. The problem here for us that we have to overcome is what do you make of the terms and conditions when the terms and conditions in the mileage program say, essentially, we can... Right, except for one thing, which is that in the mileage terms and conditions at issue in Lagan and here, there's a carve-out that says, unless otherwise stated. And unfortunately for Lagan, they didn't really have anything else to go with. You don't think a promise of lifetime benefits is a pretty clear contradiction from we can change it anytime we want? I would think that the case for plaintiffs in Lagan was much stronger than yours. Well, I agree that I was rooting for the Lagan plaintiffs. And I also agree that... No doubt. And as you might imagine, I have considerable sympathy for your approach to this. Yes. I dissented, but Lagan is the law of the circuit. That's right. And so on the one hand, I recognize as the law of the circuit that unless there's some good basis for distinction, we're going to lose here, even though I would have liked to have seen the plaintiffs win in Lagan. And even though, arguably, Judge Hamilton... I don't think you understand how these things work. People get, you know, they get a privileged status, but they're not told what exactly it's going to mean for them, right? Well, this being the exception... I mean, a lot of these things, a million miles, it's no big deal at all. You get a few upgrades and it gets changed around. You know it's going to get changed around. Well, it turns out that's not true here. And that's what makes this case different. I mean, there are all kinds of... No, it isn't. It's all the same. It's the same airline. Could you tell us exactly what changes these plaintiffs are upset about? It's not clear to me. Well, the record reflects various benefits of the batch that was offered to people who flew in the calendar year. Some of them were taken away or devalued. Which, that's what I'm trying to ask you. Why are we here? Yeah, I'll have to go back to the record to double check specifically. What are the benefits that were taken away from 2011 to 2012? But I will say that there's no dispute. I think United conceded, or has conceded, that there was... Well, what were they? Well, it related to boarding times, how you accumulate miles, the rate at which you get bonus miles. What do you mean by boarding times? Early boarding times. Two minutes or three minutes, or what? Yeah, pretty much. It might be the difference between 15 or five. Well, is there anything non-trivial? Well, to an airline passenger, that's all very non-trivial. Oh, come on. Well, again, for purposes... How many bags you can carry on? Pardon? How many bags you can carry on? Yes, that's right. And I think the rate at which miles multiply. Now, concededly, I would need to go back to the record to be very precise. You don't even know. You don't really know what's at stake for your client here. No, I disagree with all respect. Because you've forgotten the record. Well, I respectfully... Which is a good reason to infer that nothing much is at stake, since it hasn't stuck in your mind. There are a batch of benefits. Everything we've talked about so far, being among them, the only hesitation is that before I put on the record... Well, is there anyone that would be regarded as significant by a normal person? Yes, they're all significant, and I think we're... Pardon? They're all significant? They're all material. They're all equally significant? Yes, that's right. Well, is there anyone that's bigger than the others? No, I believe that the batch of benefits... They're all little trivial things. Little trivial things that generate millions of dollars of revenue for airlines because people actually care about them. Well, of course, because they have millions of customers. Yes, that's right, but... That doesn't tell you anything about the value to an individual customer. But in order for me to win this case, Your Honor, with all respect, and believe me, I understand your point loud and clear. I mean, I myself may not care quite so much about whether I board 5 or 15 minutes ahead of time, but there are millions of people who do. And we've pled in our complaint that this matters to people, and it has value. So that allegation is not only unchallenged, but I think conceded by United. There's no dispute that they took benefits away, that they devalued benefits. They don't get to do that under a contract theory unless you're persuaded that the terms and conditions allow them to do that after the fact. That was the outcome in Lagan, and the only reason that shouldn't be the outcome here, which is what makes us different, is because the terms and conditions have a carve-out. It says expressly provided herein, unless otherwise provided elsewhere. And it turns out... I want to just stop you a minute. Are you talking about any passengers besides the million-mile? Yes, the only thing we're talking about here is the so-called premier-level flyers. People who have flown a million miles and have earned all these things over a period of time. That's right, who in our class, people who flew in 2011, and who got the benefits that were in place at that time, and then in 2012, when they said, boy, isn't life great? I get to reap the benefits of boarding five minutes ahead of time instead of three, or whatever it is. The United States said, well, actually, we changed our minds. We're going to not do anything we told you. But I assume it's a finite number. It's not everybody. I don't go anywhere, but I assume there are people that fly a million miles over a period of time, and that puts them in kind of a narrow group. Yes, that's right. I don't know how many. Do you know? Does it matter? I don't think we got to that point in discovery to establish the class size, but it doesn't matter for our case. It wouldn't matter if it was 100, or 100,000, or 100 million. It would all be the same as to those people. The only reason, as I say, I think the most important point on this case on which this issue turns, the appeal, is what do we do about the carve-out? There is a carve-out here that did not exist in Legan. There is language that says, unless provided otherwise, and we quote it in our brief several times, and then the PREMIER program has conditions that make it different. The language at issue is that in the PREMIER terms and conditions, they talk about how these benefits will change from year to year. So if you have terms and conditions that say we can do anything we want at any time, we can even renege on promises that we made to you that would otherwise be a breach of contract under common law, we can do all of that. And you've agreed to that under these terms and conditions. Well, if the terms and conditions say that, and this is of course a sort of gross exaggeration just to illustrate the point, it remains true fundamentally that the contract can be modified by performance. So if they are simultaneously saying if you fly x miles during the year you will have ABC benefits, they don't get to fall back on just that language alone. Why not? Well, I mean, if you accept the principle that contracts can be modified subsequent to the terms and conditions here, performance, a unilateral contract in which the company says fly these miles, you get these benefits, we're entitled to a reasonable inference that that can be understood in a way that is not just collapsing back on the clause that says we can do whatever we want. And I recognize that was the dissent, not the majority in Legan, but there's one difference here, which is that there's actually contractual language in the terms and conditions that says oh, by the way, for the Premier people we're going to treat you differently. For the Premier people... Mr. Siprit, let me ask you about a factual point here. You relied in your brief on some deposition testimony from a United Representative. Who was this person? What position and what did the notice of deposition say that the person was supposed to testify about? Well, he was the corporate representative put up pursuant to Rule 30b-6 and he was supposed to testify on the terms and conditions and I'm paraphrasing, I don't have the notice in front of me, but he was supposed to testify. Do we have the notice in the record? Yes, I'm not looking at it right now, but I believe it is in the record. And do we have a name? Yes, his name... And a title. Or a title. I'll take either. I would have to flip through the brief here and pull it for you, Your Honor, which I'm happy to do, but it's... He was a... some sort of executive. I don't want to be loose about this. Let's be precise. Please check during Pele's argument. Yeah, I sure will. It looks like I'm almost out of time here. I just wanted to circle back on the fact that, factually, again, the premier program in the terms and conditions does say our changes can occur from year to year. So we think what that means is that if you fly in 2011 and you get benefits for 2012, starting in 2012 they can change. So when you fly in 2012, you may be getting something else in 2013. And we have no problem with that. What it doesn't mean is that if you've already flown the miles in 2011 and already earned the benefits, they can be stripped away. That language is much different than what was at issue in Lagan's and that is the single reason why we win here and the plaintiffs unfortunately lost in that case. And I'll find that citation, Your Honor. What weight, if any, do you get to the provision about United can change the benefits at any time? Yeah, I think that if you are living in a world where that provision alone exists and nothing else, which oversimplifies a little, but if that's the only issue, then whether United can utilize that as an exculpatory provision depends on whether the record supports a conduct or establishes conduct after the fact that would constitute a contract modification. So if you have that contract and then United a day later says to consumers, let me be loud and clear with you people. Yeah, we know what the terms and conditions say, but read in context, what we mean is if you fly a certain number of miles during a year, you'll get these benefits. United is very hard-pressed, I think, to rely on that exculpatory provision and say, well, we said we could do anything. And I think that was the point of the dissent in Lagan. Here, we have not only that argument, but one other thing, which is language in the contract. Why didn't your client ask United what it meant? Why didn't my class representative ask United? To him it was clear. No, it's not clear, because you have these two provisions, change benefits at any time and year to year. Now, if that creates uncertainty and contradiction, why doesn't the person ask? Well, by the way, if there is uncertainty and contradiction, I can live with that, because that's all we need to get a reversal here. Well, I think we lost on summary judgment, because the district court found that there was no fact question about what the contract means. We think our reading of it is right. I think your client should have asked United what it meant. Well, I think my client would say that in his mind it was, he perhaps gave United the benefit of the doubt and cut them a charitable construction when he shouldn't have. You have an ambiguous contract, you ask what it means before you sign it. You may have foolishly believed that United intended to honor its promises. He dared to believe that and apparently was made the fool for that. But the difference is, I think that we actually have a claim because of it. I don't need, I don't think I need to persuade this court at this juncture that our reading is objectively correct. I need only persuade the court that it's at least a plausible interpretation that a jury, that could be taken to a jury. And if you believe that, then a reversal is required here, because the district court said there was only one reasonable interpretation, and that was United's. And that's why it's reversible error. Okay, well, thank you. Thank you, Your Honors, and I'll find that citation. Thank you, Mr. Shippard. Ms. Hemrick? May it please the court, my name is Sandra Hemrick, and I represent Appellee's United Continental Holdings and United Airlines. I do want to start by correcting a few misstatements by Plaintiff's Counsel. There's only one contract here, and that is the Mileage Plus Rules. It's a binding bilateral contract that plaintiffs agreed to when they signed up for the Mileage Plus Program. And that contract, the Mileage Plus Rules, does not include any carve-out of the Premier Program. So... How is it a contract if United can change anything anytime it wants? That doesn't make it not a contract, Your Honor. They agreed to the Mileage Plus Rules, and United agrees that therefore they can be members and they can... What promises are binding on United? Legally binding? The promise is that if you sign up and you agree to be a member of Mileage Plus and to abide by the rules, including the rules that we can change things, you will be the get the benefits of the program. Now, the rules do allow United... But you can change them anytime you want. Yes, absolutely. Maybe this is just semantics, but I... If there's no legally binding obligation on United, I don't see how it's a contract. I disagree, Your Honor, because, again, the... What the contract does is it says... Well, that's fine. I mean, you ought to embrace that. There's no contract, and obviously the plaintiff has no case. That's a fair point, Your Honor. I'd also point out to the extent that... The problem is it seems to be hard to swallow for your corporate representative in the deposition. Can you tell us who this was? Plaintiff's counsel cannot. Yes. It was actually not a he, it was a she. She, that's what I thought. Her name is Eileen Furlong. I believe her title is Managing Director of Mileage Plus. So she's in charge of this operation, and she seemed to kind of choke on this idea that there's no promise binding on United. I don't agree with that at all, Your Honor. I think she was very clear in her testimony, well, in several things. First of all, she was very clear that the Mileage Plus rule or the contract, and they allow United to change the benefits and change the program anytime. The point is, it's a frequent flyer program. It's a loyalty program. If you sign up, you get the benefits of the frequent flyer program, but we get to decide what those benefits are. Right. Here's... I'm just quoting her deposition. This is page 288. If I flew 25,000 miles exactly in 2011, United's rules would not. I would get the status in 2012, right? Answer, that's correct. And United could not take that status away from me three months into 2012 because it wanted to increase the 25,000 mile qualification requirement for 2011. Answer, right. You'd already completed your 2011 flying. Given the position that there is no binding promise and that United can change anything anytime it wants, her answer is wrong. May I respond? Please. I would respond in two ways. First of all, changing status or changing the qualifications for status is not what this case is about. And the plaintiffs consistently conflate status and benefits. That's number one. This is not about changing status. It's about changing the benefits. The second point, though, is and this is not on the record, but we'd be happy to supplement. Mrs. Furlong's testimony actually continues onto page 290. And on 290, she explicitly says, even as to status, the rules allow United to change it at any time. Okay. She swallowed it. She took the corporate Kool-Aid. I think that's unfair. And again, Your Honor. I have another hard ground for you. One is that it's not a contract. And therefore, he loses. My other is that people like the status. They like to be a million miles. I once had a platinum card from America. I don't remember actually. I never looked at what you get from America. But yeah, people enjoy it. They brag, I flew a million miles. So they get that and they expect to get something. They don't expect the mileage plus program to be abolished. Although, of course, United is going down the drain, so maybe we can. But I disagree with that, Your Honor. It's not a conventional contract in the sense that it's really promising something of value. At most, the status, which is to say some people will value the status independently of the benefits. I agree. It's a frequent flyer program. For example, you fly first class. Suppose you always fly first class. And you always make a reservation early enough to get your first class seat. Would you derive any benefits from mileage plus? Only if you signed up. And that's really the point. If you're sitting, if there's a passenger sitting in seat 1A in first class, and that passenger has signed up for mileage plus and agreed to abide by the mileage plus rules, and in particular the rule that says here's this great program, we'd love you to participate, the only thing is we get to change it when we want. It's up to us to decide what the benefits are. That person sitting in 1A, if they've signed up, they get benefits from flying on that besides just arriving from New York to Chicago. If the person sitting in 2A right next to them who paid exactly the same amount for the ticket isn't a member of mileage plus and didn't agree to those rules, they don't get anything. So, you're absolutely correct, Your Honor. The only thing that you have to do to have this ability to earn these benefits is agree to the mileage plus rules, and in particular the rule that says we can change the benefits. We get to decide what the benefits are. So, here's the third theory of your program. It's a gamble. I would say it's a marketing program. You don't really know what you're getting. You will get something. You don't really know how much. But you're not paying for it, really, except that you're using the airline. Right, exactly. And the fact is, and again, contrary to Mr. Siprit's argument, there was no promise, and this goes also back to Judge Hamilton's comment, which is there was no promise on the 2011 website that said if you fly a certain number of miles, you'll get XYZ benefits. He's just making that up. It's not there. And that's what the district court recognized. What it said was if you fly these miles, you'll get this status. It doesn't tell you what the benefits of the status are going to be. You'll find that out later. You'll find that out in 2012, but you'll get the status. And there's no question they got the status. That is not what this case is about. The other thing is, again, it's a marketing program. It's a loyalty program. As plaintiff's counsel said, all the airlines have them. To the extent that plaintiffs decide, you know what, we don't think the United Benefits are very good, they can fly a different airline. That's what the ADA was all about, that this is going to be governed by market forces, not by regulation, not by Consumer Fraud Act claims. Is this only first class? Oh, no. So it's everybody. And so, because I know I don't fly much. I take the train. But he's very loyal. He's very loyal. I go business class and they give me, you can sit in a nicer room if you want to wait. And I never want to wait. So I try to get there at the last minute. But curiously, is that something else they do? If you're first class, you can sit in a nice place and while you're waiting, get coffee and stuff? Yes, but that has nothing to do with status. It's a separate issue. You can also, I believe, you can have access, you can have discounted, for example, discounted membership in the United Club, the special lounge, if you're a mileage plus member and you have status. But if you buy a first class ticket, you get to go in the special lounge no matter what. No matter what. Exactly. Ms. Hemrick, I couldn't help but noting some of this discussion about Mr. Lagan about a year ago at a time when Mr. Smisek was the CEO of United. He resigned recently. I'm aware of that, Aaron. And I can't help but note this irony that in the company's public filings with the SEC, his separation agreement provides for lifetime flight benefits plus tax indemnification payments so he doesn't have to pay taxes on the value of those flights. I take it there's nothing like general condition number one in Mr. Smisek's separation agreement? I honestly have no idea, Your Honor. I have not been And United presumably intends to honor its promise of lifetime benefits to him but not to its million mile fliers. I do not know, but again, I mean this is not the Lagan case and these aren't lifetime benefits. And United did honor its promise here. The promise was if you fly these miles, you get this status. They got the status. There was no promise that you get XYZ benefits in spite of plaintiff's effort to concoct one. I'm definitely not going to respond to that.  you feel the need. Not privy to those discussions either, thankfully. I do want to address I'm out of time. Do I have one more point? If I could just say Mr. Super said repeatedly that if general condition number one does not apply here, the plaintiffs have a slam dunk and therefore they win the case. That's not true. There are at least two other reasons why they lose. One, of course, is that the language they rely on that the benefits are subject to change from year to year. That's all United did. It changed them from year to year. So even under their theory they have no claim. And finally as I said before, even putting aside United's ability to change the benefits, whether at any time or from year to year, there were no specific benefits promised. So there's no offer to enforce here. We ask you to affirm the judgment of the District Court. Thank you. Okay, thank you very much Ms. Hemrick. Mr. Sipert? Yes, thank you, Your Honor. And just very briefly, I think the citation to the record issue got sorted out. I listened with interest when I heard the term, no matter what. I'm sorry, what's the citation? The person's, the representative, the designee. We sorted that out. I heard with interest the term, no matter what. If a person buys a first class ticket, no matter what, you're going in that lounge. Well, a consumer listening to this oral argument should understand that what that really means is, it means no such thing. You will get in the first class lounge unless and until we tell you before you try to go in that we're taking it away. Because we have the right to do that under the terms and conditions. It means nothing more or less. And, you know, ultimately Judge Posner, you pointed out that if there is no contract here, if this whole thing is illusory or unenforceable because it could allow them to do anything, well that's no good for us either because then we have nothing. Actually, I disagree with that and I want to be crystal clear, if I might, about that point. If the terms and conditions are thrown out the window, what we're left with is the unilateral contract that, on our view, would give us the slam dunk victory. If our only case theory is that United said do X, Y, Z and you'll get A, B, C benefits, that's all we need to win. The only problem for us is if the terms and conditions come into play, at which point we have to resort to the carve out, which is, I think, outcome determinative. But we'd love to live in a world where there was no terms and conditions. It's a gamble point. Respectfully, again, Judge Posner, I don't agree with that. In fact, I think that illustrates precisely what this is not about. Oftentimes, when you join a frequent flyer program as a consumer, they will say to you, yeah, join the program and by putting your name on this piece of paper, you'll get a bunch of benefits and, P.S., we can take anything away at any time. That's a gamble. If you choose to give United your business as a frequent flyer, knowing that it could all go up in a puff of smoke, that's a gamble, is what happened here, which is when they say to you, if you fly X miles during this year, you will have these specific concrete benefits. That is not a gamble. It is the very opposite of a gamble. It is a clear contract that United has breached. So that's all we are talking about here with this case. So how is year defined? Year defined, I'm sorry? Is it January 1st to December 31st, or is it the year starting when you signed up, or what? Well, it would be if United, on January 1st, or as is more likely the case, sometime prior to January 1st, 2011, says, beginning in 2011, here's how the program is going to work. We're going to ask you to do this, or you can do it if you want to, and here's what you have to do. So if you sign up on December 31st, December 11th, I mean, 2011, December 1st, you only have these benefits guaranteed you for a month? No, if you sign up and come around to this for the first time in December of 2011, then you've got an awful lot of flying to do in order for that to mean anything for you. Because if you fail to meet the enumerated requirements to get the 2012 benefits, then it doesn't matter whether you join on January 15th or December 15th, you either fly the miles or you don't, you either do what's asked of you or you don't, you either satisfy the terms of the unilateral contract and accept it through performance, or you don't. So what that means is that from 2011 through December 31st, 2011, at the end of the year, that's the period of eligibility to accumulate these miles. I suppose there are some travelers out there who may have only needed four weeks to do it. There may be others, probably most of them, who needed closer to the whole year. But that doesn't matter. If either you or the benefits are to be yours in 2012, that's not a gamble. That is the opposite of a gamble. The one final point I would just like to briefly make, if I might, is that the Council has represented and tried to correct me about whether the benefits were actually spelled out on the website. They were. I don't know how to say this any other way. They are spelled out. Where do we find them? In the record, on the Terms and Conditions section, which is at the heart of this case, there is a status level homepage. Where do we find it in our record? The citation? Yes. Well, not to disappoint, but I don't have the citation to the record for it, but I know that in our brief we referenced it. Just now I was scrambling to find the references in our brief to respond to the comments made by Council. So I don't have the record site, but I'd be happy to send that to the Court. The point is, though, let's assume, if we might, that the... Let's hope it's in your brief. Oh, it's in our brief. I can give you the information in our brief. What I would like to do is give you the actual page from the record, even better. The point, though, is just that in the premier homepage, which they concede exists, there is a hyperlink that says, click here to see what your benefits are. So it's unimaginable to me that they're in a position to deny that the benefits were spelled out. They were not only spelled out, they were expressly referenced. I will supplement that with a letter to the Court, if I might, with a citation. And I apologize for not having that at my fingertips. Okay. Well, thank you very much. Thank you. Mr. Siprin and Ms. Hemrick.